UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
ALLAN APPLESTEIN TTEE FBO D.C.A.  :  Case No. 03-6268 (TPG)
GRANTOR TRUST,

              Plaintiff,   :

      - against -

                                   :
THE PROVINCE OF BUENOS AIRES,

              Defendant          X
------------------------------------------------------------

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR POST-JUDGMENT ATTACHMENT

WACHTEL & MASYR, LLP
Howard Kleinhendler
Julian D. Schreibman
Sara Spiegelman
1 Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500
*Attorneys for Plaintiff*

Defendant Province of Buenos Aires (the "Province"), evidently proud that it persuaded "*94%*" of prior bond-holders to accept restructured debt instruments, leaving plaintiff among the inconvenient "holdout creditors," now seeks to conduct a new $500 million bond offering, managed in part by a U.S. bank, while refusing to pay its obligations to plaintiff.[1] While the Foreign Sovereign Immunities Act admittedly places many hurdles in the path of a post-judgment creditor seeking to attach the assets of a defendant such as the Province, the facts before the Court support attachment in this case or, at the very least, appropriately tailored discovery.

In the rapid-fire world of international finance, the Province's claim that its planned bond offering is "hypothetical" and "does not exist," amounts to a shell-game designed to prevent creditors from seeing the money until it is safely out of reach. Indeed, the Province's statement that "[n]o bond issuance has even been launched by the Province," is highly misleading in light of the recent statement by an official spokesperson for the Province that the Province "aims to sell $500 million worth of bonds as early as September[.]" *Buenos Aires Province Readies Bond Sale as Costs Sink*, Bloomberg, August 4, 2010 (Reply Declaration of Howard Kleinhendler, Exhibit A). The Province's Economy Minister confirmed that the Province's 2010 budget contains an authorization to sell up to $1 billion worth of bonds this year. *Id.*

It is thus clear that the bond offering is imminent and, as reflected in the Province's opposition papers, the Province has no intention whatsoever of disclosing to plaintiff or other creditors any information concerning the flow of proceeds. Absent action now, either through attachment or further discovery, plaintiff will be without a remedy if it turns out that proceeds were in fact used for commercial purposes in the United States. Based upon the unrefuted

---

[1] Plaintiff's two judgments against the Province currently total $1,573,018.80 including interest.

allegations of the plaintiff, as well as the Province's submissions, it is likely that the Province has *already committed* to using proceeds commercially in the United States.

First, as set forth in June 29, 2010 Reuters article attached to plaintiff's initial application, the Province has already retained a U.S. bank – Bank of America-Merrill Lynch ("BOA") – to serve as one of two lead managers of the bond offering. (Declaration of Howard Kleinhendler dated August 3, 2010, Ex. C). Nothing in the Province's opposition repudiates that reporting, which appears to be sourced directly to the Province's Economy Minister. Unquestionably the fees paid to BOA for these financial services represent a commercial transaction by the Province and such fees are customarily paid directly from the proceeds of a bond offering. Given the size of the offering and BOA's role, it is possible that the portion of the proceeds slated for Bank of America will be more than enough to fully satisfy the Province's debt to plaintiff. Thus, the Province's contractual obligations to BOA – although not yet disclosed in detail – very likely constitutes an obligation of the Province due to be paid in the United States.

Second, the Province states in its opposition papers, that its bond offering will be subject to the jurisdiction of the U.S. Securities & Exchange Commission even the possibility of which raises the certainty of review by U.S.-based lawyers whose compensation would also customarily be paid directly from proceeds of the bond offering. More importantly, the Province's assertion that the bonds will be subject to the jurisdiction of the SEC provides a reasonable basis for Applestein to seek discovery on whether the bonds will be offered for sale in the US.

Notably, despite the Province's emphasis on the issue of whether proceeds will be "used for commercial purposes in the United States," its chief factual evidence – the declaration of Walter Saracco – is entirely silent on this point only saying carefully that the Province "will not *receive* proceeds, conduct sales, or deposit bonds in the United States." Contrary to the

2

Province's assertion, the Saracco Declaration does not say that no attachable proceeds will ever exist. It is entirely silent on whether the offering will be advertised in the United States, offered to U.S.-based persons or entities, or whether any proceeds will remain in, or be remitted to, the United States for any purpose. As set forth above, all available evidence in fact points to the use of a portion of the proceeds for the commercial purposes associated with the preparation, review and management of a massive international bond offering with respect to which at least one major U.S. firm is already under contract.

Indeed, the fact that the Province believes that its bond offering will be subject to United States securities laws and SEC rules and regulations casts serious doubt on the credibility of Mr. Saracco's assurance that the bond offering will be entirely outside of the United States. If that were true, it would not be subject to U.S. securities laws. *See Koal Industries Corp. v. Asland, S.A*, 808 F. Supp. 1143, 1155 (S.D.N.Y. 1992)

Even if the Court were to find that an attachment order is premature, limited discovery is clearly warranted in light of the facts now known to the Court. Among other things, plaintiff should be permitted to inquire into:

a) the Province's contract with Bank of America, with particular reference to their terms of compensation;

b) the identity of any other U.S. service providers and their terms of compensation including, for example, law firms and public relations/marketing firms;

c) statements prepared for the SEC; and

d) the terms of the subscription agreement and indentures.

Such discovery is clearly permissible under these circumstances. First, as set forth in plaintiff's moving papers, this court has already recognized that the Province has waived

3

sovereign immunity in all matters relating to the bonds purchased by the plaintiff. Thus, there is no basis for any immunity defense as it relates to this court's jurisdiction to permit enforcement of its judgment against the Province, which includes post-judgment discovery and attachment.

Further, courts have routinely permitted discovery under circumstance similar to those present here. *See, e.g., Rubin v. Islamic Republic of Iran* 2007 WL 1169701 (N.D. Ill. April 17, 2007)(permitting discovery on plaintiff's theory that entity was an agent of the Republic of Iran and that its acts constituted "commercial activity" for the purposes of 28 U.S.C. §1610); *Rubin v. Islamic Republic of Iran*, 2008 WL 192321 * 20 (Jan. 18, 2008 N. D. Ill. 2008)("broad discovery is required in this case in order to give the Plaintiffs and the Court a meaningful opportunity to ascertain whether Iran has any property within the United States against which the Plaintiffs may enforce their judgment"); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 (9th Cir.1992) (upholding district court's order granting discovery of *worldwide* assets of Beijing Ever Bright Industrial Co., described as "an arm of the [Chinese] government.").

The Province's suggestion that disclosure of such information to plaintiff would be improper is baseless. Aside from the fact that, having made the mistake once, plaintiff has no intention of itself purchasing the Province's debt again, there is nothing in the disclosures plaintiff seeks that cannot be secured by a confidentiality order. While the Province cites *Capital Ventures International v. Republic of* Argentina, 05-Civ. 4085 (TPG), 06 Civ. 207 (TPG) for the proposition that discovery should not be permitted, in that case, as the Province points out, there had been "no public announcements" concerning the debt purchase at issue. The Province's attempt to make a parallel by characterizing the upcoming bond sale as a "private financial

4

plan[]" is simply inaccurate given the publically available information on the subject. (Defendant's Memorandum of Law in Opposition, p. 8).

Indeed, the Province itself has placed significant information into the public domain concerning its decision making and its business partners on this transaction. For example, the Province's spokesperson has plainly stated that it plans to issue bonds once market conditions improve: "We are looking to get a yield as close to one digit as possible." *Buenos Aires Readies Bond Sale, supra*. This is hardly a state secret. Moreover, as demonstrated above, plaintiff's interest is narrowly targeted at the portion of the bond proceeds that would be used in the United States for commercial purposes and therefore within the exception to FSIA attachment immunity.

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiff's motion in its entirety.

Dated: New York, New York
August 13, 2010

                                          WACHTEL & MASYR, LLP

                                          By: _____
                                          Howard Kleinhendler
                                          Julian D. Schreibman
                                          Sara Spiegelman
                                          1 Dag Hammarskjold Plaza
                                          885 Second Avenue, 47th Floor
                                          New York, New York 10017
                                          (212) 909-9500

                                          *Attorneys for Plaintiff*